May it please the Court, my name is Juan Carlos Rodriguez and I represent the appellate in these proceedings, Jorge Luis Torres, Jr. A clinical and forensic psychologist found Torres to be incompetent. The federal government, through its own doctor via the Department of Homeland Security, conducted an independent evaluation of Torres and decided that it was necessary to request a competency hearing before the Immigration Court. Pursuant to that motion, the Immigration Court also found Torres to be incompetent. Despite these independent evaluations, which clearly raised a substantial and legitimate doubt as to Torres' competency, the District Court erroneously denied his 2255 motion without a hearing. The District Court also erred in relying on its incompetency finding to deny Torres' claim of ineffective assistance of counsel. Torres did not need to establish that he was incompetent in fact in order to prevail on his ineffective assistance of counsel claim. Turning back to Torres' claim that he was incompetent in fact at the time that he pleaded guilty, the evidence nevertheless presented was sufficient to raise a substantial and legitimate doubt as to his competency at the time that he pleaded guilty. In particular, we have the competency evaluation performed by Dr. Jack Farrell, an evaluation wherein it was determined that Torres was incompetent not only presently, but at the time that he entered his plea of guilty. Now the District Court attempts to characterize Dr. Farrell's assessment as being one merely revolving around Torres' IQ, but this is incorrect. Dr. Farrell actually based his IQ, excuse me, based his evaluation not only on Torres' low IQ, which demonstrated that he had a deficient level of understanding, that he was mentally retarded, but Dr. Farrell's analysis was also based, and his evaluation was based on Torres' performance on the CAST-MR, the Competence Assessment for Standing Trial for Defendants with Mental Retardation. Dr. Farrell determined that Torres was unable to understand less than half of the basic legal concepts pursuant to that assessment, and that he could not meet the burden of competence. Now the IQ level that's been discussed much in the briefing is significant in that it was a low IQ several years ago, back in 1995, at a level of 62, excuse me, a level of 63, and in the more recent performance on the Weigh Scale Test, when he was determined to have an IQ of 62, this consistent level of IQ demonstrates that over a prolonged period of time, Torres has been suffering from mental retardation. Could you go back to, at the beginning you said that you didn't have a burden to show that he was in fact incompetent. Can you tell me what is the proper lens from which we should evaluate this? Yes, Your Honor. There's actually two different standards at play here. One governs his claim of incompetency in fact, and for the incompetency in fact claim, Torres has to first present sufficient probative evidence, clear evidence to demonstrate that there is a substantial and legitimate doubt as to his competency. Right. Clear and convincing evidence that there's a substantial doubt on competency. So that's the first. That's the first step in the incompetence in fact claim. Once Torres meets that burden, which we feel he has in this case, he merely has to prove his incompetency by preponderance of the evidence after that point. Now that's a separate standard from the standard which governs his claim of ineffective assistance of counsel. To meet his burden for ineffective assistance of counsel, he does not need to establish that he was incompetent in fact. You say to me, do you have a, is it also to the Fifth Circuit or some other court? I mean to meet, Your Honor, for the Fifth Circuit before the district court. To meet. To meet, Your Honor, yes. Not to you. No, that's correct, Your Honor. I apologize if I'm not pronouncing that. No, I apologize. Sometimes it's hard to hear in this courtroom. Yes, Your Honor. No. To meet his burden for, excuse me, to meet his burden to establish an ineffective assistance of counsel claim, he has two separate tests. One, he has to show that the performance of counsel fell below an objective standard of reasonableness, which we believe it did in this case. And two, he only has to show a reasonable probability of incompetence sufficient to undermine confidence in the outcome of the proceeding. Now this reasonable probability test is a lower test than a preponderance of the evidence, and it does not require that he demonstrate that he was incompetent in fact in order to establish that prong of the test. So this is what you're going on, not on the incompetence in fact? We're advancing both arguments, Your Honor. We're arguing that he was incompetent in fact, but should the court not believe that he was incompetent in fact, we can still prevail with our ineffective assistance of counsel claim. Because to establish an effective assistance of counsel, we only have to show that his attorney failed to investigate when a reasonable attorney would have, and that that failure to investigate caused Torres prejudice because there was a reasonable probability that he was incompetent sufficient to raise, sufficient to undermine confidence in the outcome of the proceeding. And again, that standard comes from this court's case in Bouchillon, where it found that it was not necessary to meet the standard of incompetency in fact, in order to nevertheless find that counsel provided ineffective assistance of counsel. Now with regards to counsel's performance, what we know in these proceedings is that counsel received various medical records which demonstrated Torres' medical history of cerebral delay, dysfunction, and damage. Despite acknowledging receipt of those records, despite being on drugs, other than spend additional time with Torres, he did not investigate further. He did not, for example, refer Torres to a psychologist. He didn't refer him to a psychiatrist. He made no attempts to evaluate further whether or not Torres was competent to proceed with the proceeding. And counsel's observations and his affidavit where he states that he spent more time with Torres are insufficient to establish that Torres was competent at that time. Counsel as a layperson lacks the training and the understanding in order to assess appropriately whether or not Torres was competent to enter his plea. Well, I have a question about that. If we were to determine that the record conclusively establishes that he's competent, you would lose on both prongs, right? Actually no, Your Honor. I don't think we would lose on the ineffective assistance of counsel prong. Because again, as Bouchillon, as this court held in Bouchillon, we are not required to establish competency in order to But if he was, in fact, competent, it was still below the standard for the ineffective assistance? Correct, Your Honor. But how can you show prejudice then? Because the prejudice analysis there is lower than what's necessary for the incompetency in fact claim. The prejudice prong only needs for Torres to establish a reasonable probability of incompetence, sufficient to undermine confidence. But if he is competent, if we find that the record shows that he was competent at the time, not eight years before and not two years after, but at the day, then how can you meet that prejudice to show that The prejudice prong can be met because, again, it's a lower standard. We don't have to go all the way to establishing competency. We just have to undermine confidence in the outcome of that proceeding. And as this court noted in Bouchillon, that's a much lower standard. It's less than a preponderance of the evidence. So we only have to show a reasonable probability of incompetence to meet the prejudice prong. Right. But my question was, if we determine that the record establishes definitively that he was competent, you can't meet that. I respectfully disagree, Your Honor. I do think that he can meet that prong because it's not required that he show that he was incompetent in fact in order to establish prejudice. He merely has to raise a reasonable probability of being incompetent. But he can't raise a reasonable probability of incompetence if he was in fact competent. Well, again, reviewing the record and the Bouchillon test which is laid out, where Bouchillon is where this court itself said that it was not necessary for the defendant to establish incompetence in fact in order to prevail on the prejudice prong, it would write that out of Bouchillon, Your Honor. There would be no place for that in the law if that were the test. Okay. If you were to win on your first argument about the incompetence on its freestanding, do you get a reversal outright? And if you win on the second argument, you can remand for evidentiary hearing or what? And I'm not foreshadowing. I'm just trying to... I understand, Your Honor. What we're asking the court to do is to remand this case for a hearing to the district court. Either way. Either way. Because, for example, with regards to the claim of incompetence in fact, again, the defendant or Torres presented sufficient evidence to raise a substantial and legitimate doubt as to his competency. We think the district court should have held the hearing on the bottom, an opportunity to present his claim in full before the court. I know that there's been much debate both in the arguments and between the parties as to whether or not Torres was competent, but there was sufficient evidence before the court via Dr. Farrell's assessment, via the assessment that caused the Department of Homeland Security to seek a competency hearing via the immigration court's finding of incompetency. All of these things raise a substantial and legitimate doubt as to whether or not Torres was incompetent. Why is it argued that the harder claim first? Why are you arguing the harder thing before you are arguing the easier thing if you say that it's easier to show the ineffectiveness and you get a hearing either way? Well, Your Honor, with regards to the ineffectiveness of counsel claim, we believe that the record clearly demonstrates that he was incompetent. In fact, with regards to the performance of a reasonable investigation, we also believe that there was a failure there on the part of counsel to reasonably investigate Torres' incompetency. He had in his possession the records which raised a sincere doubt as to whether or not Torres was competent to proceed with those proceedings. Having those records in his possession, he didn't investigate further. He didn't look further into whether or not Torres understood the nature of the proceedings against him. He spent more time with him, is what he says, and that's all. But again, defense counsel is not an expert who's capable of making that assessment of Torres' competency on his own. As for the prejudice prong of the analysis with regards to ineffective assistance of counsel claim, yes, Torres did not need to establish that he was incompetent. In fact, in order to meet that prong, he only needed to raise a reasonable probability of incompetency. And again, the evidence here really covers both bases. Because of the evidence that was presented, his argument that he was prejudiced by the failure of defense counsel to reasonably investigate, because had defense counsel investigated, had he referred him to a psychiatrist, had he asked for a competency hearing, it would have undermined Torres' ability to enter into a plea of guilty in the case, Your Honor. That's the argument that we're advancing here. Now, with regards to the district court's decision, aside from getting the standard wrong with regards to the prejudice prong of the analysis, the district court also errs in other ways. For example, the district court places undue reliance on Torres' performance at the plea and sentencing hearings in order to support his competency finding. The district court was not the court that held the rearrangement hearing or that took Torres' guilty plea. And so the district court is merely reviewing, coldly, a transcript of proceedings wherein Torres was one of 13 other defendants pleading guilty in a group hearing before a magistrate court judge. It seems to me one of the principal things concerning the district court is the timing of the evaluation of competence. And he was not persuaded by the decision by the immigration court, a more recent decision, than the guilty plea. So when the judge indicates that Torres engaged with counsel, asked questions, expressed concerns over deportation, you know the list better than I do, the rest of what he says, why is that not a legitimate timing, at least, set of facts on timing of whether the fellow was competent? You said he was one of numerous defendants who were pleading, but is it not a section in the transcript just for Torres where this kind of evaluation can be made? It is a section of the transcript, but I think it's important to point out, and if the court looks at that transcript of proceedings precisely how it is that he pleads, he was the eighth defendant in line. He's listening to seven other people answer the same question before him. He's repeating and giving the same response others are giving. I'm not saying the court can't look at that to decide what indicia of competency it gives. I'm just saying it doesn't give a great indicia or indication of his competency at the time that he pled guilty. And his responses, also, are pretty consistent with what Dr. Farrell stated in his evaluation, that Torres is someone who was very suggestible. He tried to demonstrate competence or an understanding when he, in fact, did not have one. And so, viewed through that lens, where he's being led on with certain questions, where he's already been given the answers by the other persons answering in front of him, it's not so surprising that he doesn't at that moment say, well, wait, I'm not competent. I think it's difficult to expect that he, particularly given Dr. Farrell's assessment, as he's someone who's defensive, who's not necessarily wanting to admit that incompetency would have raised that issue on his own. And also, viewing the entirety of the proceeding, Torres and his parents, his family, attempted to inform counsel. They did what they thought they were supposed to do by letting his defense counsel know about his medical history, so that counsel who was trained, who had been hired to represent him, would take the appropriate action to present those concerns to the court. What are the circumstances of the affidavit? I think that's an unusual attribute to this case. The affidavit of the defense counsel? Yes. Okay. Well, I'm sorry, Your Honor, I don't quite understand the question. The circumstances of the affidavit? How did it come to be that he submitted this affidavit? I'm sorry, I forgot that. I believe that in response to the 2255 motion filed by Torres, the government's response appended the affidavit of defense counsel to their response. So they sought it out? That's my understanding, Your Honor, is they sought out that response of affidavit from defense counsel. Are defense counsel supposed to give those affidavits that are in order to the detriment of their clients? I mean, that's odd to me. It is odd, Your Honor, but I would also point out with regards to that affidavit that it does not clearly establish, again, that Torres was competent to plead guilty. The affidavit, to the extent it discusses Torres' competency and the efforts made by defense counsel, they're woefully deficient. Reasonable counsel would have conducted further investigation. A prudent attorney would have asked for a competency hearing and would have asked for a competency evaluation. Again, Your Honor, we ask that the court remand this for further proceedings before the district court so that Torres may have a hearing. Thank you. May it please the court. My name is Angela Raba and I represent the United States. I think to begin, what needs to be clarified is the standards of review. For purposes of his ineffective assistance of counsel, I mean, I'm sorry, for purposes of his incompetency and fact claim, the appellant was required to show by clear and convincing evidence sufficient facts to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial. Ms. Raba, standard strikes me as odd with the overlay of 2255. Your brief very helpfully points out it dates to 1967 at least, if not earlier than that. You know what 2255, this is not a trick question because I don't know. Do you know what the equivalent of 2255 said at that time and so far as what a petitioner needed to show, what kind of level of support for whatever the claim may be? Yes. The, for purposes of incompetency. What the statute itself said, is that what you're addressing? No, I'm addressing the case law, the interpretation. And that's what I'm talking about. The case law just seems out of touch with what 2255 says now. And I'm just wondering if 2255, or if it has been renumbered, whatever the number was at that time, 1967, did it have any kind of general language such as is in 2255 now, which doesn't have anywhere near that kind of requirement? I'm not aware of any statutory specification of those requirements, Your Honor. Does Bruce, which is the case, does it even talk about 2255? The Bruce cases, Your Honor, specify that for purposes, and again, this is not an interest in general. Just a yes or no. I'm not, I just don't want you to go down rabbit trails for me. All I want to know is, does Bruce capture the sort of openness to these petitions that 2255 does without basically saying you have to prove your case before you can bring your case? Was that at all discussed in Bruce? No, not in terms of the statute, Your Honor. What the Bruce cases were saying was... Isn't it inconsistent with 2255, this sort of you cannot proceed unless you have, I'm now looking at the wrong thing, unless you positively, unequivocally, unequivocally, probably shouldn't even try that one, and clearly generate a real substantial legitimate doubt. That's the opposite of what 2255 says. If I may clarify, Your Honor, it's not saying that he's not, I mean, it's a two-step process. And what the Bruce cases were saying is that before a habeas court, for the first time when a person brings up incompetency at trial, when he brings it up for the first time in his life, he has to go further to investigate that claim unless he makes a threshold showing. Now once he makes the threshold showing, which is the difficult, the standard that I just cited, then if he had made that showing, then the court at that point would proceed to another step of the process, at which point he would be allowed to prove his incompetency by preponderance of the evidence, at which case that is consistent. Hold off, counsel. I'm following your argument. All I'm trying to get to is it seems very dated. There's a way to make it fit together, and you have in your briefing made it fit together with 2255, but it does seem to be an inconsistency there. We don't seem to have a lot of law on this that's more recent. What is the most recent case that's wrestled with this and said that, in fact, that you are right, that this standard is still the right standard to be using for previously unraised mental competency? Your Honor, I don't have the specific dates of the cases that are cited in my brief. If the court would like me to address that in a supplemental briefing, I would be more than happy to address your concerns. No, I'm not making that request. We can deal with that. All right. Well, can you tell me if the standard is that he just has to raise a doubt? Do you win? If you have the wrong standard, and we use instead the standard that they urge, do you lose? No, Your Honor. I don't think the record would support that conclusion. I think the evidence that the appellant submitted just doesn't meet that cut. It doesn't raise a bona fide doubt. Why doesn't it? If he was already—it's just like it's assuming that he had this window because he had serious problems before for a long time. He had serious problems after. So there's just this one day of clarity that he happened to have in the middle that's the key time. Maybe I'm just exaggerating. I understand, Your Honor. Why isn't that raised some sort of doubt? Because it's more likely that he was consistently having these difficulties. Your Honor, to answer that question, there has to be a thorough analysis of the evidence that he did produce. And when they discussed the documents that the parents provided to the attorney at the time of the plea. So those documents, of course, would not have included the psychological report, the new testing that was conducted in 2012. So the timeframe is based on the documents that existed at that time, at least for purposes of what the attorney knew. And when you evaluate, when you go through that analysis, a detailed review of the documents that were presented, most of those medical conditions that were discussed had to do with school records pertaining to speech impediment. There was motor skill disability, epilepsy, so the documents themselves from that time, none of them had any reason to raise a doubt as to his mental competency when you take it in the context of the attorney's communication with his client at that time. And when you look at the attorney's affidavit, and it has to be in that context, to see what he was dealing with at the time. He stated that he met and talked to the appellant and his wife in person, on the phone and in writing. He explained the proceedings against him. He explained his defenses, the charges, the immigration consequences. He said he spent more time than normal, not because he felt he was incompetent, because he was aware of perhaps a less, when you compare to an average person, that he was not as intellectually average as anyone else. So his main, and the appellant's main concerns at that time in his discussions were the immigration consequences. That shows a degree of understanding of his consequences. It's a rational understanding of the facts that were before him. He ultimately decided, the appellant ultimately decided to go to, instead of going to trial to avoid immigration consequences, he was going to go in and release the material witnesses so that he could get a lower sentence, in the hopes of a lower sentence. Mr. Bagley, the attorney, even put on the record that he specifically advised the appellant that he would be deported. And he said that at the sentencing hearing. So when you, and also when you look at the plea hearing, the sentencing hearing, yes, they're very short answers. But when you look at those answers, they're appropriate. They're not all just yes, yes, yes. He'll give a no answer when it's appropriate. So you have to consider the context of what this attorney knew from his observations. So then, could he have followed just the other people before him? I'm certain he could have, Your Honor, but in terms of specific interaction, the sentencing transcript definitely shows specific one-on-one interaction. So there's no indication in the record that he was not aware of this group, that he was just following what other people were saying, because the court would give the question, go through the list of people, and then address, Mr. Torres, what's your answer? Not in that language, of course. And of course, he would give the answer that was appropriate. And you're not saying, though, that the attorney's evidence is dispositive, right? No. Because, I mean, to some extent, the attorney's been adverse to the client at that point and trying to, has his own interest. What? No. I'm sorry. I may have misunderstood your question. The attorney, you're not just standing on the affidavit alone, or his own, because there's some adversity there. No, absolutely not. No, I think the attorney's affidavit is significant to show the court, or to explain what his ability to communicate with was at that time. So when you have that situation, his proof would have to, basically, to show a substantial legitimate doubt, or to show that the attorney was somehow derelict in not investigating, you have to look at what he had at that time. Well, he did have the family members coming up and giving more stuff. Why wouldn't that say, hold this train? We're not going to, we're going to go ahead with the other seven people, or whatever, before him. But we're going to wait on him, because I need to go through all this stuff and figure out. Well, the attorney did, his affidavit says he did review the documents, and that those documents did not change his opinion. Right there on the spot. I mean, how do you, is that satisfactory? Would that have put a normal attorney on duty, that, oh, I need to stop on this one, there might be a problem? Well, again, Erin, and I thank you for pointing that out. The point here is what a reasonable attorney would have done. Yeah, wouldn't you have, I mean, I'm not going to ask what you would do, but it seems like an average attorney would stop, would say, I've got all these other people, this is all an issue, and I need to go back and check on it, and we need to reschedule this sentencing, I mean, this plea on this person. And ask the judge, and that may be a pain, but I need to check this out. Yeah, I don't think the record speaks to that. I don't think the record will speak to whether or not there was any delay, or whether... But it should be some delay, once, if the family members come and hand you something, and talk to you at the thing, and want to raise something. You need a recess, or something at least. That's not my understanding of when he... That's not when he gave information? I don't believe that's what the father's affidavit may have said something about meeting him at some point to give him the... Okay, you think it's before, it's not on the day of. You know, I'd have to check the record again, Your Honor, that's my recollection, that the father of the appellant gave him the records. They're not doing these group sentencings anymore, are they? I'm not aware of that. I think they've... Oh, you don't know one way or the other? I don't know one way or the other, Your Honor. I thought they stopped those. They may very well have, Your Honor. But I think the key point in terms of... Please, I mean, please. Go ahead. I think the key point in terms of what the attorney's behavior was, whether his performance was deficient, is to actually look at the records that were there. And the records that were there were medical records. And they don't show any kind of reference to whether or not he had an inability to communicate. So again, if those records don't contradict what the attorney's observations were of the defendant, then there would be no reason for him to question his competency. The medical report, for example, dated October 9th. It talks about... Appellant's brief goes into various medical issues. But when you actually look at what those medical issues were, they have to do with problems manifested in difficulties in motor skills or motor aspect of speech. At one point, he had an IQ of 81, which again cuts against the argument that his neonatal issues somehow caused him to be mentally incompetent. Now, there was an incident in 85, which... I'm sorry, 95, I believe it was. But again, I think there was... if you look at the actual records, there's... that discusses again language disorders, psychomotor development. So if there's nothing in those records that demonstrate some type of incapacity of this defendant to actually understand, to meet the test for incompetency, sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. Could you address the reply brief's observations that the answers at the hearing actually show confusion and not... and they're non-responsive and they don't actually show that he's making good answers to the questions being asked? Well, I think... No, there is... And I'm trying to find that particular point, Your Honour. It's at pages 17 and 18 of the brief. And it's talking about how he's asking if he can go home. He's... He's not... He's not responding in a way that's... responsive to the questions. And in fact, the court apparently stops and clarifies something because it doesn't appear that he's following. If I'm not mistaken, Your Honour, that may be a reference to the sentencing transcript and it's where he says... Yeah, it is the sentencing hearing. OK. And so, I mean, you're not saying he was competent at the... to be guilty and then not by the sentencing. I mean, I think it's certainly a relevant time period, don't you? Exactly, Your Honour. I think the evidence before the court, including all the medical records, would support the conclusion that he was not incompetent at any point. Dr, did you want to address his confusion at sentencing? There was one question where it was asked something about... He was given an opportunity to speak and he was... He asked for one more opportunity and then he stated he would change and he claimed he'd never done anything wrong. OK, that... I think the suggestion is that basically he didn't understand. But when given that this is allocution on part of the defendant, saying whatever he has to say to ask the court for what he wants at sentencing, I don't think it's inconsistent with finding that he was mentally competent. And also, in the sentencing hearing, another thing that supports the mental competency determination is that he even talked about his awareness of a state case. And the court mentioned that he had a theft case and he knew at that time the theft case was going to be dismissed. He told the court that he had spoken with his attorney in that case. Excuse me. And he told... He seemed to explain that the dismissal was because he had returned the merchandise. So, again, he's showing an awareness of basically... ..of his...of the consequences and the proceedings. Well, Counsel, it seems there's a fair amount of evidence here that would at least raise questions about his mental competence. Maybe you're right on how you are analysing it. The issue here is whether there should be a hearing, which wasn't given, though, considering how the judge ruled, I'm not sure the hearing would have moved things much further along. It seems to me without this threshold standard that you've talked about for mental competency being raised after the fact, it would be an easier case to say that the motion and the files and the records of the case do not conclusively show that Torres is entitled to no relief. So if this was a straight-up issue of, well, there's enough evidence here to raise questions, is it conclusively the opposite, conclusively show no relief is available, it would be a relatively easy case to say at least the hearing ought to be granted. I think... What do you say to that other than no? I think, Your Honour, it's not the point... The point wouldn't be whether or not a hearing would add anything or take anything away from the court, but I think the point is he had a burden, a threshold burden to meet. And because of the nature of the evidence that he produced, the court could make the conclusion that that's not enough. And when you look at... And there is question. When you look at the competency report that was done in 2012, but the purpose... Let me ask you this, because, again, you're right, the threshold does seem to be recognised still, but would you say that the records before us conclusively shows that he was competent? I don't... I don't know, Your Honour. I wouldn't be able to answer that question, but, again, conclusively... Well, we're supposed to answer that, and judges are supposed to, so does the record conclusively show something? If it doesn't, you get a hearing. Based on this record, Your Honour, I would say that it does. But the problem with that conclusion is that the psychological report, when you consider that, he's saying he wasn't incompetent. So you have to consider, well, how valid is this psychologist report? And when you look at it, there's conclusory, there's speculation, there's conclusion. And it was based on testing that was done in 2012. But there's even... It even goes through the records from his childhood, and it talks about all the records which relate to psychomotor development and seizures. It talks about the drop in IQ, mostly. And when you look at the record, there's a huge leap with regard to what the testing is today versus his IQ must be that he was incompetent back then. But when you look at the Hearings case, we know that IQ is not alone sufficient to demonstrate... But maybe that means you should have a hearing and have it DAWBERT tested and figure it out. And again, if there wasn't the threshold showing, Your Honour, and it certainly is within the discretion of the district court to make that finding. But if the district court found that what these documents he produced did not meet the threshold, which is a very heavy burden, then I think it was certainly within the court's discretion to deny the hearing. Could I ask quickly about... I'm concerned that the trial counsel did not seek any guidance in this area and just knew that there was an issue, but made a determination on their own that it didn't matter. And it seems like this would certainly be something that would be explored with the medical professional, that the counsel would consult an expert and figure this out. And it would be certainly in his client's best interest to do so, because even if he turns out not to be competent, he's trying to avoid being deported. And to be competent in time and with his family, there's so many reasons why you would want to explore this further once it raises a threshold issue. Certainly, and again, I think that goes back to the records that he was provided. Did it actually raise a doubt in his mind? Well, he said he had some concerns, but he resolved them. Well, in terms of what the records showed, it showed low IQ. But was low IQ sufficient? And when you take it in context of what his observations were... Well, I mean, if you know that we're really interested in the judicial system and low IQ, and we have a number of cases that have come out in the past year in the Supreme Courts, I mean, low IQ gets you some additional process. And so why doesn't that trigger some... And I understand low IQ is not completely a proxy for competence. I completely understand that and have been on some of these cases. But why doesn't that at least raise a threshold issue to say, I need to get an expert in here to evaluate this? Well, I think in the Heurig's case, Your Honour, the attorney in that case did consult with the psychologist and said, you know, he's got an IQ of 49. And basically asked, does that preclude him from, you know, meeting the test for incompetency? And at that point, the psychologist heard back, basically he repeated his observations about the defendant's questions and his rational, logical thinking, at which point the psychologist said that he didn't think it was a problem. So I think that issue is basically, if there's merely a low IQ that you're concerned with, it doesn't necessarily mean that he's incompetent. And at that point, I think an attorney, a reasonable attorney, should be able to rely on his observations of his communications with the defendant. Thank you. Thank you. Regarding the performance of defense counsel, and I wanted to get back in real quick, because there was a question a moment ago about whether there was any delay, whether there was any indication in those proceedings that defense counsel did anything other than simply spend, as he alleged, more time with the defendant, and there was not. The offense in this case occurred on May 26, 2009. A short four months later, September 29, 2010,  This is when Torres pled guilty along with 13 other defendants. And I know the court also had a question as to whether group pleadings still proceed along the Texas border. They do. Del Rio, Laredo, along those borders, particularly with immigration-related offenses such as transporting or unlawful entry, where you have a group of Spanish-speaking defendants, there are group proceedings. Now, with regards to this case, again, getting back as well to points made regarding the sentencing hearing, I think that when you get to the more substantive questions at the sentencing hearing, they do demonstrate that Torres lacked an understanding of what was happening. If we take as true defense counsel's affidavit that Torres understood he would be deported, if by that time we get to sentencing, Torres should have known that he was going to get deported because he had already pled guilty, why is he asking for a second chance? Why is he asking for another opportunity? It does not make sense. For him to ask and request an opportunity to go home or to somehow be released when he knows that he's going to be deported, that's a little nonsensical. Well, maybe it's last mercy. It's just seeking last desperate move. Just ask one more time. But it's also, Your Honor, indicative that he lacked an understanding or he lacked a comprehension of what was happening during the course of those proceedings. Similarly, his response, initially when the court asked him or informed him about the pending criminal case in Bexar County, his initial response was, what case? He didn't understand what the court was referring to. And it was only after the court redirected him that he gave another non-responsive answer by saying, oh, yes, that's going to be dismissed. When the court was actually trying to inform him, well, whatever sentence she was going to, the district court was going to issue in this case was going to be tacked onto the sentence for the state criminal case. Now, with regards to the medical records that Torres provided to defense counsel and the evidence before defense counsel that existed prior to the plea, I think it's important to note defense counsel in his own affidavit and as acknowledged by counsel today, he recognized Torres had a limited understanding. He recognized that Torres' level was less than that of a normal person. That should have been enough to trigger further investigation by him. Do you have any case that says failure to do that is a deficiency? Yes, Your Honor. This court's case in Butchion, wherein it held that it would be a very rare circumstance where a decision not to investigate would be reasonable after counsel has notice of a defendant's mental problems. Here, counsel had notice of the mental problems and he failed to conduct an investigation. And as this court stated there, that would be a rare circumstance indeed wherein a failure to investigate would be reasonable. That failure to investigate in this matter is rather significant and it should control this court's decision regarding the ineffective assistance of counsel claim. Again, Your Honors, what we're asking for is a hearing. Ultimately, the test here is whether the motions, files, records before the district court conclusively show that Torres was not entitled to relief. They far from met that standard. This is not a case where Torres failed to conclusively show, or I'm sorry, where the record shows that he's not entitled to relief. We believe he is entitled to a hearing and these proceedings should be remanded for a hearing before the district court. Thank you. This case is submitted.